**Cecil Rudolph COVINGTON, Jr., Appellant,**

**v.**

**The STATE of Texas, Appellee.**

No. 09–86–00243 CR.

Court of Appeals of Texas, Beaumont.

May 25, 1988.

Gilbert G. Garcia, Garcia & Garcia, Conroe, for appellant.

Peter Speers, III, Dist. Atty., Conroe, for appellee.

OPINION

BROOKSHIRE, Justice.

Appellant was charged with capital murder by intentionally causing the death of Debra Davis by shooting her with a firearm and cutting her with a knife in the course of committing or attempting to commit a robbery of John Vandiver and Debra Davis. In a juried proceeding appellant was found guilty of the lesser included offense of murder. *TEX.PENAL CODE ANN. sec. 19.02* (Vernon 1974). Thereafter, the jury assessed punishment at 75 years in the State Department of Corrections.

Appellant brings forward two points of error. In his first point of error, appellant contends the trial court committed reversible error in permitting the State to introduce into evidence over appellant's objection after hearing his Motion to Suppress his confession; and then at the trial before the jury to permit into evidence appellant's written, oral and tape-recorded statements. The appellant argued that such statements were obtained after an illegal arrest of the

appellant. The appellant states that these rulings were in violation of his constitutional and statutory rights under the Fourth, Fifth, Sixth and Fourteenth Amendments of the United States Constitution, Article I, Section 10 of the Texas Constitution, and Articles 1.04, 15.05, and 38.21 of the Texas Code of Criminal Procedure. In addition the appellant relies on the Supreme Court decisions in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *United States v. Bayer,* 331 U.S. 532, 67 S.Ct. 1394, 91 L.Ed.2d 1654 (1947).

The central, controlling concept according to the appellant that created these various alleged errors was because his arrest was invalid and illegal. A narrative of the evidence is necessary.

The bodies of John Vandiver and Debra Davis were found in the residence of Vandiver on February 22, 1985. The tragedies of the killings had transpired the prior day. A Sergeant Renfroe received some pertinent and interesting information. He received this information through an anonymous tip. Sometime later, Sergeant Renfroe travelled to the State of Florida in an effort to locate appellant. A warrant for the arrest of appellant was issued by a district judge in Montgomery County. This warrant for arrest was supported by an affidavit signed and sworn to by Lieutenant Patrick O'Shaughnessy of Montgomery County Sheriff's office.

In the latter part of August of 1985 appellant was approaching his home, having completed his day's work. He was then approached by two officers from the Collier County Sheriff's Department located in Naples, Florida. That same Sheriff's Department had set up certain members of their "Swat Team". The "Swat Team" acted in good faith. This "Swat Team" was at various points around and adjacent to the motel room wherein the appellant had been staying in Naples, where he avers his illegal arrest took place. The appellant was arrested and taken to the Florida Sheriff's Department where Detective R.J. Renfroe and Investigator Gene Brown were waiting. Renfroe had been acting as the investigating officer connected with the Montgomery County Sheriff's Department at Conroe. Gene Brown was an Investigator with the Collier County Sheriff's Department in Florida. The Florida officer had no knowledge of any alleged defects in the arrest warrant. We find no defects.

During the interim, autopsies had been conducted and concluded on the bodies of Vandiver and Davis. Vandiver's autopsy basically revealed that he had received and sustained two gunshot wounds to his head and an additional two gunshot wounds to his back and a grazing wound on the right side of his neck. The fatal shots were the two head wounds and one wound in the back of his body.

Dr. Eduardo Bellas, the medical examiner or pathologist, testified that the autopsy of Debra Davis revealed a gunshot wound to the head on the right side, two gunshot wounds in the front lower portion of the neck, three additional gunshot wounds in the front chest, a stab wound in the neck, and several cutting wounds in and around the neck.

During the middle part of August 1985, Detective Renfroe was still conducting the course of his investigation. He was contacted by one Mike Charbeneaux who gave the investigating detective definite, valuable information regarding both of the killings. Renfroe found the information to be reliable and trustworthy. Likewise, the information was consistent with Renfroe's own investigative findings. Renfroe later testified that based on his confirmation of the information obtained from Charbeneaux, Renfroe concluded that there were four suspects in these killings: namely, Thomas Mathes, also known as Thomas Smith Mathes, III; the appellant Covington; Dennis Holland; and Joe Makosky. Renfroe had an interview with Janice Covington, the estranged wife of appellant. Having received this information from Charbeneaux and Janice, Renfroe communicated with his supervisor, Lt. O'Shaugh-

nessy. O'Shaughnessy obtained an arrest warrant for the appellant. The appellant was the first of the four suspects to be arrested. Renfroe had information consisting of admissions made by the appellant concerning the deaths. In addition to this Renfroe had gathered additional information during his own investigation of the case. Renfroe reported the same to Lt. O'Shaughnessy for the purpose of applying for an arrest warrant of the appellant. It should be borne in mind that an arrest warrant was obtained from an independent magistrate. O'Shaughnessy was the named affiant on the arrest warrant of Covington. Renfroe also informed O'Shaughnessy that he (Renfroe) had corroborated much of the information obtained from the confidential informant during Renfroe's interview with Janice Covington. Virtually all of the information gathered was reduced to writing in the affidavit.

■ We have reviewed the affidavit of Lt. O'Shaughnessy of Montgomery County. He identifies one of his informants, Renfroe, as investigator of the offense. He also makes an affidavit about the confidential informant who he swore must remain confidential for reasons of safety. This confidential informant unequivocally told Detective Renfroe that Cecil Covington, Jr., and three other men were the persons who had killed John Duncan Vandiver and Debra Davis on or about February 22, 1985, at their residence on Dobbin–Huffsmith Road in Montgomery County. The informant had stated that he himself personally had been told of the murders by two of the participants themselves. The informant was able to correctly and in detail describe the rented vehicle used for the transportation of the assailants. The informant could and did describe the location and type of wounds to each of the bodies as well as the caliber of the weapons used. He described the clothing worn by Davis as well as a large sum of money taken from the Vandiver residence.

The affiant stated that this information (none of which was known to the public) had been corroborated by Detective Renf-

roe at the scene and also in the follow-up investigation. The affiant further stated that Renfroe had interviewed Janice Covington in Naples, Florida and she had unequivocally said that Cecil Covington, Jr., had admitted to her that he and three other men murdered Vandiver and Davis. Janice was able to supply details of the manner of the deaths of the victims and the motives, all of which were unknown to the public. This information was further physically corroborated by Renfroe from his investigation on the actual scene of the murders. The affiant had been told by Renfroe that Cecil Covington, Jr., had been located in the State of Florida at a certain address. Covington was described as a white male, date of birth being December 26, 1953, being approximately 6' tall and weighing about 155 lbs. with blue eyes and brown hair. Covington was said to be armed and dangerous.

The issuing magistrate being a district judge, Honorable Olen Underwood of Montgomery County, stated that he'd examined the facts and the statements set out by the affiant. The magistrate found that probable cause existed for the issuance of a warrant for the arrest of the appellant. The magistrate correctly found probable cause for the issuance of the warrant for arrest; so do we.

After the arrest, the appellant blurted out certain statements. These statements were not the result of custodial interrogation. The blurted out statements were in substance that the thing had been bothering Covington and it had been in his mind and head but he'd had no one to talk to about these tragic events. He said something like: we went to buy drugs and we took drugs and money. Covington expressed sorrow about the events, stating again that these matters had been on his mind for a long time, or quite a time, and that he really wanted to talk but it was hard to talk about murder. Then a public defender was called who advised the appellant.

Later the appellant made another statement which he initiated to the effect that it was Tom's plan and that he, Covington, did

not know it was going to be murder and that he, Covington, had no one to talk about what had happened and that Tom Mathes just ran out on all of us. Covington said something like that he, Covington, would like to be locked in the same room with Tom Mathes. The appellant at this point was described as being very emotional; he was crying.

Under the record we conclude that the totality of the circumstances test should be applied. *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). We hold that there was probable cause and that the magistrate correctly and properly issued the warrant for the arrest of appellant. We conclude that *TEX. CODE CRIM. PROC. art 15.05* (Vernon 1977) and all of its subparts, 1 through 4, had been fully complied with. We conclude that there was not only sufficient information, but probable cause, which sustained an independent judgment made by the magistrate that Article 15.05 and its four subsections had been adhered to. The warrant for arrest was properly issued. As a corollary, a subpoint, under point of error No. 1 the appellant argues that his written and oral and tape recorded statements and confessions were inadmissible. We disagree.

The trial judge is the sole trier of the disputed facts concerning the voluntariness and the admissibility of the confessions. The trial judge's findings of fact and conclusions of law are entitled to great weight. The trial judge's decisions and actions are not to be set aside unless a clear abuse of his discretion is shown. *Hawkins v. State,* 628 S.W.2d 71 (Tex. Crim.App.1982). The determination as to whether a confession is voluntary and admissible is to be based upon an examination of all the facts and circumstances surrounding its taking and acquisition. This is sometimes referred to as the totality of the circumstances test. *Berry v. State,* 582 S.W.2d 463 (Tex.Crim.App.1979). The trial judge is the exclusive and sole fact-finder concerning the credibility of the witnesses and the weight and believability to be given to their testimony. *Burks v. State,* 583 S.W.2d 389 (Tex.Crim.App.1979). Any

points of error attacking the trial court's determinations and decisions either on the facts or on the conclusions of law must be gauged and tested by the standard of whether the trial judge abused his broad discretion. We decide no abuse is shown.

Moreover, after Detective Renfroe and the appellant arrived in Conroe, the appellant was taken before Judge James Dinkins, who is a Justice of the Peace in Precinct 2 of Montgomery County. Judge Dinkins gave the appellant the full magistrate's warnings. These warnings contained a correct list of the various rights of the appellant. Covington signed the warning instrument. This was about 4:15 p.m. on August 30. These matters are shown in State's Exhibit No. 6 which is in evidence and to which no objection was made. After Judge Dinkins' warnings, the detective and the appellant went to an area in the east side of the county because Covington had indicated that he wanted to demonstrate the whereabouts of the weapons that had been used in the two murders. When they arrived at the drainage ditch the appellant pointed out different places where he had thrown pieces of the weapons used in the killings. Subsequently, these weapon parts were actually recovered. Appellant made statements that lead to the recovery of the parts of the offending weapons. Covington indicated that on the day that he had actually disposed of these weapon parts he had walked along the bank of the same ditch and had tossed various pieces into the water as he walked along. He also indicated that sections of a Samurai sword had been tossed into a wooded area nearby. Parts of the sword were recovered. Covington's attitude on the trip back from the ditch and the wooded area back to the Montgomery County Sheriff's Department was quiet. He did not invoke his right to counsel and he indicated a willingness to continue to talk about what had happened. It was after returning from the ditch that the appellant gave an oral taped confession. In that, he confessed to the murder of Debra Davis by shooting her with a .25 caliber pistol, having shot her several times. The appellant's oral statement was reduced to writing bearing the same date,

being the evening of August 30, 1985, at approximately 9:05 p.m.

We conclude that the trial court conducted careful and indepth hearings on the motion to suppress and later made findings and conclusions concerning the written, oral and tape recorded confessions of appellant. *See McKittrick v. State*, 535 S.W. 2d 873 (Tex.Crim.App.1976). We conclude that the trial judge followed the rules set out in *McKittrick v. State, id.* We decide that the affidavit leading to the warrant of arrest complied with *TEX.CODE CRIM. PROC.ANN. art. 15.05* (Vernon 1977). We also hold that the said affidavit was sufficient. *Jones v. State*, 568 S.W.2d 847 (Tex. Crim.App.1978), *cert. den'd*, 439 U.S. 959, 99 S.Ct. 363, 58 L.Ed.2d 352; *habeas corpus granted upon other grounds*, 767 F.2d 101 (5th Cir.1985), *cert. den'd*, 474 U.S. 947, 106 S.Ct. 345, 88 L.Ed.2d 292 (1985). We think that the so-called two prong test under *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), has been qualified and restricted, if not overruled. The totality of the surrounding circumstances standard as set forth in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), has largely superceded *Aguilar*. We also conclude that under this record the voluntariness of the statements and confessions of the accused have been abundantly demonstrated and that *TEX.CODE CRIM. PROC.ANN. art. 38.22, sec. 6* (Vernon 1979) was observed and followed.

We likewise hold that the statements of the accused and his confessions that set forth facts that were found to be true and which conduced to establish his guilt such as the finding of the various parts of the murder pistols and the Samuria sword were clearly admissible. *TEX.CODE CRIM.PROC.ANN. art. 38.22, sec. 3(c)* (Vernon Supp.1988).

In the trial court's actions concerning its findings on the voluntariness of the statements and confessions, we find no abuse of discretion on the trial judge's part. *Hawkins v. State*, 628 S.W.2d 71 (Tex.Crim. App.1982). His findings of facts and conclusions of law are entitled to great weight in a review of the same on appeal.

The appellant took the stand in his own defense. He admitted that he had shot and killed Debra Davis while in the course of committing a robbery. He stated that he had emptied a .25 caliber handgun on Debra and that he was not actually afraid of Tom Mathes and that he could handle Mathes. The appellant stated that he himself was armed with a .25 caliber pistol at the time Mathes told him to kill Debra. Appellant reaffirmed and admitted that his August 30th first confession was correct. He acknowledged that he was a bodyguard for Tom Mathes. Appellant knew that Mathes' occupation was that of a drug dealer and that such drug dealing involved both violence and the use of weapons.

■ Since we have held that the admission of the various statements and confessions of appellant, both oral, taped and written was a correct ruling by the trial court, we also sanquinely rule that the appellant by his own testimony in his effort to show murder rather than capital murder certainly cured any possible error. Appellant was attempting to create a defense against capital murder. *Thomas v. State*, 572 S.W.2d 507 (Tex.Crim.App.1978—opinion on the State's Motion for Rehearing by Presiding Judge Onion). Judge Onion wrote:

> Thus if a defendant takes the witness stand to refute, deny, contradict, or impeach evidence or testimony properly objected to, no waiver of the objection occurs. But if a defendant in testifying admits or confirms the truth of the facts or evidence objected to, even if attempting to create a defense based on or beyond those facts, a waiver of the objection does occur.

We deem that the appellant admitted and confirmed the truth of the facts on the offense of murder as distinguished from capital murder. Therefore, a waiver of any possible objections did occur. In *Thomas, id.*, Judge Onion further wrote that this distinction concerning waiver or non-waiver can best be understood and ruled upon by examining the total, specific facts of each individual case. We have examined the facts of this appellant's case and find that

he waived any possible objections to any of his statements or confessions.

Furthermore, this unusual record glaringly demonstrates that there existed a great deal of evidence besides the confessions that tended to prove the guilt of this appellant for the offense of capital murder. Dennis Holland testified to the planned and premeditated robbery and murder of John Vandiver. Clear evidence of the robbery motive of the crime was shown by a witness who testified that Tom Mathes, the employer of this appellant, owed about $8,000.00 for marijuana. Another witness, McCormack stated that after the two killings appellant, Covington, Jr., handed the murder weapons to him for destruction in order to get rid of incriminating evidence. This state of the evidence, aside from the oral, tape recorded and written confessions, would have been compelling inducement on the part of the appellant to testify in the manner in which he did testify in presenting his direct testimony to the jury. Appellant was obviously attempting to convince the jury that he was not guilty of capital murder. This was his effort to avoid the death sentence. Hence, the appellant made a trial strategy choice. His decision on trial strategy was an affirmative decision on his part to avoid the death penalty. *See Ochoa v. State*, 573 S.W.2d 796 (Tex.Crim. App.1978). We determined that the statements and confessions made in Montgomery County were both voluntary and were obtained in compliance with *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We overrule the appellant's first points for review. We likewise overrule his second point of error.

We conclude that the appellant definitely initiated his conversation with Detective Renfroe regarding the nature of the charges against him, the criminal procedures under Texas law and the correctional institutions in Texas as well as his involvement in the Vandiver–Davis murders.

We further find that this accused waived his rights, including his rights to counsel, after having been formally warned and admonished by a Justice of the Peace, James Dinkins. *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *Williams v. State*, 566 S.W.2d 919 (Tex. Crim.App.1978); *Mays v. State*, 726 S.W.2d 937 (Tex.Crim.App.1986).

It is clear that on August 30, 1985, upon arriving in Conroe, appellant was taken at once before a Justice of the Peace, James Dinkins, and given full warnings by that magistrate. Right thereafter the appellant lead Detective Renfroe and other peace officers to a location in the eastern part of Montgomery County where he pointed out the place in which he threw the weapons parts of the two pistols used in the John Vandiver and Debra Davis murders. These actions and statements were in compliance with *TEX.CODE CRIM.PROC. ANN. art. 38.22, sec. 3(c)* (Vernon Supp. 1988). The record reflects that the appellant was remorseful and strongly desired to clear his conscience by discussing his involvement in the killings.

Once again, the *Miranda* warnings were read to the appellant. He gave yet another oral, tape recorded confession to the murders of Vandiver and Davis. This tape recorded statement was followed very shortly by the appellant reducing his statement to writing. This resulted in his first written confession which was given at about 9:05 p.m. on August 30, 1985. Appellant wanted to make certain corrections and there was a second written statement given later.

■ In any event, any statement which contains assertions of facts or circumstances that are found to be true and correct and which conduce to the establishment of the guilt of the accused, such as the finding of secreted or stolen properties or the instruments or weapons with which the accused states the offense or offenses were committed is admissible. *Ex Parte Stansbery*, 702 S.W.2d 643 (Tex.Crim.App.1986). Whether an oral confession is admissible under these circumstances is a question of law for the district court. *Moon v. State*, 607 S.W.2d 569 (Tex.Crim.App.1980). And once such an oral confession is found to be admissible under *TEX.CODE CRIM. PROC.ANN. art. 38.22, sec. 3(c)*, (Vernon Supp.1988), then the entire confession is

admissible. *Marini v. State*, 593 S.W.2d 709 (Tex.Crim.App.1980).

We disallow the appellant's second point of error. We affirm the judgment and sentence entered below.